**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | § | |
|---|---|---|
| **SOVEREIGN PEAK VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **v.** | § | |
| | § | |
| **ACER INC. AND** | § | **C.A. NO. 6:21-cv-01375** |
| **ACER AMERICA CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Complaint against Defendants Acer Inc. ("AI") and Acer America Corporation ("AAC") (collectively Acer Inc. and Acer America Corporation are referred to as "Defendants," "Acer Group," or "Acer") for infringement of U.S. Patent No. 8,467,723 (the "'723 patent"), U.S. Patent No. 8,792,453 (the "'453 patent"), and U.S. Patent No. 7,158,148 (the "'148 patent) (collectively, the "Asserted Patents").

## THE PARTIES

1. Sovereign Peak Ventures, LLC is a Texas limited liability company, with a principal place of business in Allen, TX.

2. On information and belief, Acer Inc. is a corporation organized and existing under the laws of Taiwan with a principal place of business at 8F., No.88, Sec. 1, Xintai 5th Rd., Xizhi Dist., New Taipei City 221, Taiwan. Acer Inc. owns 100% of the shares of Boardwalk Capital Holdings limited. Boardwalk Capital Holdings limited owns 100% of the shares of Acer American Holdings Corporation. Acer American Holdings Corporation owns 100% of the shares of Gateway, Inc. Gateway, Inc. holds more than 10% of the shares of Acer America Corporation.

1

Acer Inc. holds at least a 10% interest in and, on information and belief, a controlling interest in Acer America Corporation.

3.      On information and belief, Acer America Corporation is a corporation organized and existing under the laws of California. Acer America Corporation maintains a place of business in this District, including at 1394 Eberhardt Rd, Temple, Texas 76504.

4.      On information and belief, each Defendant, individually and with Acer Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as computers, accused of infringement. Acer America Corporation operates in agency as part of the Acer Group. Acer America Corporation in agency with the Acer Group provides a distribution channel of infringing products within this District and the U.S. nationally. Further, Acer America Corporation regularly imports and inserts into the stream of commerce computers, such that infringing computers will be offered for sale and sold in this District and throughout the United States.

5.      On information and belief, Defendants are an interrelated group of companies which collectively comprise one of the largest electronics manufacturers in the United States.

6.      On information and belief, Defendants, individually, together, and/or in concert, participate in the design, development, manufacture, sale for importation into the United States, offers for sale for importation into the United States, importation into the United States, sale within the United States after importation, and offers for sale within the United States after importation, of computers that infringe the Asserted Patents.

7.      The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released the Mova P, the smallest and lightest mobile phone on the market, which revolutionized the industry by showing the demand for a compact, lightweight device. Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market. Panasonic's history of innovation is also borne out by its intellectual property. Indeed, a search of the USPTO database where the patent assignee is "Panasonic" yields over 27,000 matches.

8.      Prior to the filing of the Complaint, SPV attempted to engage Acer and/or its agents in good faith licensing discussions related to the Asserted Patents, including by conducting technical and licensing discussions with employees from Acer's in-house legal department responsible for patent matters on April 20 and June 9, 2021. Acer's past and continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of SPV's patented technologies without fair compensation to SPV.

9.      On information and belief, Defendants operate in agency with each other as a group. *See, e.g.*, https://www.acer-group.com/ag/en/TW/content/home ("Acer is one of the world's top ICT companies with a presence in more than 160 countries."). Acer induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as computers and projectors, accused of infringement. Defendants provide a distribution channel of infringing products within this District and the U.S. nationally. Defendants, between and amongst

themselves, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

10.     On information and belief, Defendants maintain a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, Acer America Corporation. Acer America Corporation provides sales and distribution support in North America as part of the Acer Group and for related entities. Acer America Corporation is an agent of Acer Inc. At the direction and control of the Acer Group, U.S.-based sales subsidiaries including, Acer America Corporation imports infringing products, such as computers and projectors, into the United States and this District.

11.     On information and belief, Acer and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Acer) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Acer Inc., alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., Acer America Corporation), conducts business in the United States, including importing, distributing, and selling computers and projectors that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

12. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' electronics, such as computers and projectors, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries, Acer America Corporation, Defendants do business in the U.S., the state of Texas, and in this District.

## JURISDICTION AND VENUE

13. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). Acer Inc. is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3). Acer America Corporation has committed acts of infringement in this District and has regular and established places of business in this District, including at least 1394 Eberhardt Rd, Temple, Texas 76504.

16. This Court has general and specific personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendants have placed, and are continuing to place, infringing

products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

17.     This Court has personal jurisdiction over Defendants, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., Acer America Corporation. Through direction and control of such subsidiaries, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Acer America Corporation is controlled by Acer Inc. The primary business of Acer America Corporation is the marketing and sale of electronic products in the United States. Acer Inc. has a controlling ownership interest in Acer America Corporation and maintains more than half of the voting rights for such subsidiaries as its basis for control. Upon information and belief, Acer Inc. compensates Acer America Corporation for its sales support services in the United States. As such, Acer Inc. has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

18.     Personal jurisdiction is proper because Defendants have committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, *inter alia*, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

19.     Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to SPV.

20.     In addition, Defendants have knowingly induced and continue to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

21.     Personal jurisdiction also exists specifically over each of the Defendants because each, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

22.     Personal jurisdiction also exists specifically over each of the Defendants because Defendants have overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

23.     To the extent any foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over such Defendant in this State and this District

would be consistent with due process and this State's long-arm statute and under national contacts in light of facts alleged in this Complaint.

24.     In addition, each of the Defendants, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendants' products have been sold and are available for sale in this District at Best Buy and Walmart retail stores, and are also available for sale and offered for sale in this District through online retailers such as Best Buy, Walmart, and Amazon. Acer also advertises its infringing products and provides customer support of its infringing products to consumers in Texas and this District through its agent's websites. *See, e.g.*, https://store.acer.com/en-us/laptops; https://www.acer.com/ac/en/US/content/support.

25.  With respect to the '723 and '453 patents, the Accused Products are devices that provide 4G LTE connectivity, including, but not limited to computers (e.g., Swift 3 and Swift 7), as well as, their components, and processes related to the same. With respect to the '148 patent, the Accused Products are devices that support Microsoft ClearType, but not limited to computers (e.g., 24" Acer Chromebase 24I2 Touch, 27" Aspire C 27 All-in-One Desktop, Acer, Acer Chromebook 311, Acer Chromebook 311 & Wireless Mouse, Acer Chromebook 314, Acer Chromebook 314 & Wireless Mouse, Acer Chromebook 315 Touch, Acer Chromebook 512, Acer Chromebook Spin 13, Acer Chromebook Spin 713, Acer Chromebox, Acer ENDURO N3, Acer ENDURO N3 Rugged Laptop, Acer ENDURO N7, Acer ENDURO T1 Tablet, Acer ENDURO Urban N3, Acer ENDURO Urban N3, Aspire 1, Aspire 1 Laptop, Aspire 3, Aspire 3 Laptop, Aspire 5, Aspire 5 Laptop, Aspire 7 Laptop, Aspire C24, Aspire C24 All-in-One Desktop, Aspire C27, Aspire TC, Aspire TC Desktop, Aspire XC, Aspire XC Desktop, Chromebook Spin 713,

Chromebase, Chromebook 311, Chromebook 312, Chromebook 313, Chromebook 314, Chromebook 315, Chromebook 317, Chromebook 318, Chromebook 512, Chromebook 712, Chromebook 715, Chromebook Enterprise 715, Chromebook Spin 511, Chromebook Spin 512,Chromebook Spin 514, Chromebook Spin 716, Chromebox CXI3, Chromebox CXi4, Chromebox Enterprise, ConceptD 3 Ezel, Enduro Urban N3, Nitro 5, Nitro 5 Gaming Laptop, Nitro 50, Predator Helios 300, Predator Helios 300 Gaming Laptop, Predator Helios 500, Predator Helios 700, Predator Helios 700 Gaming Laptop, Predator Orion 3000, Predator Orion 5000, Predator Orion 9000, Predator Triton 300, Predator Triton 300 SE, Predator Triton 300 SE Gaming Laptop, Predator Triton 500, Predator Triton 500 Gaming Laptop, Predator Triton 500 SE, Predator Triton 700, Predator Triton 900, Spin 1, Spin 1 Laptop, Spin 3, Spin 3 Laptop, Spin 5, Spin 5 Laptop, Spin 511, Spin 512, Swift 1, Swift 3, Swift 3 Laptop, Swift 3X Laptop, Swift 5, Swift 5 Laptop, Swift X laptop, TravelMate B3, TravelMate P2, TravelMate P4, TravelMate P6, TravelMate P6 Laptop, Veriton, Veriton X, Veriton X Desktop), as well as, their components, and processes related to the same.

26. On information and belief, Acer controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries. Such directed and authorized activities include, the U.S. Subsidiaries' using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendants' U.S.-based sales subsidiaries are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Acer researches, designs, develops, and manufactures computers and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding

that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendants' U.S.-based sales subsidiaries also administer, on behalf of Defendants, requests for service under and any disputes arising from Defendants' limited warranty of the Accused Products sold in the U.S., including in Texas and this judicial district. *See, e.g.*, https://static.acer.com/up/Resource/Acer/Docs/US/Standard%20Warranty/PanAm-20150126/20150129/Acer_CONS_WTY_DOC_1_YR_MICI_US_CA_MX_LA_46_AD148_00 8_090514.pdf. Thus, Defendants' U.S.-based sales subsidiaries conduct infringing activities on behalf of Defendants.

27. On information and belief, Defendants' U.S.-based sales subsidiaries corporate presence in the United States gives Acer substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendants' U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for sale Defendants' products, including computers incorporating infringing devices and processes, on behalf of Defendants. For example, Defendants' U.S.-based sales subsidiaries operate within Defendants' global network of sales subsidiaries in North and South America, Europe, Asia, Australia, and the Middle East. In the U.S., including within the Western District of Texas, Defendants' projectors and computers, which comprise infringing devices and processes, are imported, distributed, offered for sale, and sold.

28. Via Defendants' alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the

Asserted Patents, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendants' computers are sold to end users by the U.S.-based subsidiaries, distributors, and customers online and at retail stores located throughout the Western District of Texas.

29.     On information and belief, Acer has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as Acer America Corporation, and customers such as Walmart, Best Buy, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, Acer has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

30.     In the alternative, the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise

under federal law, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the U.S. Constitution.

31.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

**COUNT I**

(INFRINGEMENT OF U.S. PATENT NO. 8,467,723)

32.     Plaintiff incorporates paragraphs 1 through 31 herein by reference.

33.     SPV is the assignee of the '723 patent, entitled "Base Station Apparatus, Mobile Apparatus, and Communication Method," with ownership of all substantial rights in the '723 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

34.     The '723 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '723 patent issued from U.S. Patent Application No. 13/585,621.

35.     Acer has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '723 patent in this judicial district and elsewhere in Texas and the United States.

36.     Upon information and belief, Acer designs, develops, manufactures, assembles and markets LTE devices configured to connect to wireless cellular networks. *See* https://www.acer.com/ac/en/US/content/4g-lte (last visited on November 23, 2021).

37.     Acer directly infringes the '723 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '723 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '723 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '723 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to Acer America Corporation and importing the Accused Products into the United States for Acer America Corporation. Upon information and belief, Acer America Corporation conducts activities that constitutes direct infringement of the '723 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and upon information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of Acer America Corporation (under both the alter ego and agency theories) because, as an example and upon information and belief, Acer Inc. and Acer America Corporation are essentially the same company,

and Acer Inc. has the right and ability to control Acer America Corporation's infringing acts and receives a direct financial benefit from Acer America Corporation's infringement.

38. For example, Acer infringes claim 9 of the '723 patent via the Accused Products that perform inter-RAT handovers and are configured to connect wireless cellular networks.

39. The Accused Products implement the "communication method performed by a mobile station apparatus that belongs to a first area, which is covered by a base station apparatus employing a first Radio Access Technology (RAT), the first area including part or entirety of a second area which is covered by a host station employing a second RAT different from the first RAT" of claim 9. Each of the Accused Products is a mobile station that performs inter-RAT handovers, where the mobile station's radio connection is switched from a first base station (e.g., LTE eNB) that employs a first RAT (e.g., LTE) to a second base station (e.g., RNC/NodeB) that employs a second (and different) RAT (e.g., GERAN/UTRAN). RAT handover scenarios include handovers between E-UTRAN (LTE) and UTRAN or GERAN (both 3G).

40. The Accused Products transmit, to the base station apparatus, notification information while the mobile station apparatus is using the first RAT when the mobile station apparatus detects that the mobile station apparatus is located in the second area while using the first RAT. For example, the Accused Products include a transmitter (e.g., an RF transceiver coupled to a RF front end and an antenna) to transmit notification information, e.g., measurement information, to the E-UTRAN eNB (i.e., the base station) which is using a first RAT (e.g., LTE). Such a transmission occurs when the mobile station detects that it is located in a second area (i.e., within a 3G radio cell while still connected to the LTE base station).

41. The Accused Products perform a handover based on traffic control by the base station apparatus using the notification information. For example, the Accused Products have a

controller that is responsive to a handover message received from the LTE eNB, based on the notification information, i.e., the measurement information.

42.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

43.     At a minimum, Acer has known of the '723 patent at least as early as the filing date of the Complaint. In addition, Acer has known about the '723 patent at least as early as April 20, 2021, when it met with SPV to discuss the patents-in-suit. Further, Acer has known about the '723 patent since at least February 4, 2021, when Acer acknowledged access to a data room providing notice of its infringement.

44.     Prior to the filing of the Complaint, Acer knew or should have known of the '723 patent, and knew or should have known that they infringed the '723 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '723 patent and took deliberately wrongful steps to ignore their infringement of the '723 patent. Moreover, Acer has been on notice of the '723 patent as a result of previous lawsuits filed by the Plaintiff against competitors of Acer and other relevant market participants, such as LG and TCL.

45.     Upon information and belief, since at least the above-mentioned date when Acer was on notice of its infringement, Acer has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '723 patent to directly infringe one or more claims of the '723 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '723 patent. Upon information and belief, Acer intends to cause, and

have taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

46. Upon information and belief, despite having knowledge of the '723 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '723 patent, Acer has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Acer's infringing activities relative to the '723 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

47. SPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to SPV in an amount that adequately compensates SPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 8,792,453)

48. Plaintiff incorporates paragraphs 1 through 47 herein by reference.

49.     SPV is the assignee of the '453 patent, entitled "Secure Tunnel Establishment Upon Attachment or Handover to an Access Network," with ownership of all substantial rights in the '453 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

50.     The '453 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '453 patent issued from U.S. Patent Application No. 13/126,924.

51.     Acer has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '453 patent in this judicial district and elsewhere in Texas and the United States.

52.     Upon information and belief, Acer designs, develops, manufactures, assembles and markets LTE devices configured to connect to wireless cellular networks. *See* https://www.acer.com/ac/en/US/content/4g-lte (last visited on November 23, 2021).

53.     Acer directly infringes the '453 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing same that incorporate the fundamental technologies covered by the '453 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '453 patent. *See, e.g., Lake Cherokee Hard Drive Techs.,*

*L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '453 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to Acer America Corporation and importing the Accused Products into the United States for Acer America Corporation. Upon information and belief, Acer America Corporation conducts activities that constitutes direct infringement of the '453 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and upon information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing conduct of Acer America Corporation (under both the alter ego and agency theories) because, as an example and upon information and belief, Acer and Acer America Corporation are essentially the same company, and Acer has the right and ability to control Acer America Corporation's infringing acts and receives a direct financial benefit from Acer America Corporation's infringement.

54.     For example, Acer infringes claim 1 of the '453 patent via the Accused Products that are configured to connect to wireless cellular network.

55.     The Accused Products implement the "method for establishing a secure tunnel to a trusted packet data gateway upon a mobile node initially attaching to or performing a handover to a target access network" of claim 1. Each of the Accused Products are cellular devices that establish a secure tunnel to a trusted packet data gateway upon the cellular devices initially attaching to or performing a handover to a target access network. This occurs when the cellular device establishes an IPsec tunnel with an evolved packet data gateway (ePDG) in a target access network.

56. For example, the Accused Products determine from a reachability list maintained in the mobile node at least one trusted packet data gateway that is reachable through the target access network, wherein the reachability list lists data sets indicating data paths and the reachability status of respective known trusted packet data gateways for each respective data path. For example, the Accused Products are User Equipment ("UE"). Each Accused Product has a pre-configured list (i.e., reachability list) with non-3GPP access technologies, access networks, or serving network operators that allow for trusted non-3GPP IP access. The cellular device receives an indication of whether the non-3GPP IP access is trusted or not. The reachability list lists data path indication, including and access point name and/or an access point IP address.

57. The Accused Products establish a secure tunnel to the trusted packet data gateway determined from the reachability list maintained in the mobile node, the secure tunnel is established prior to the attachment to the target access network. For example, the 3GPP cellular device establishes a secure IPsec tunnel to the trusted data packet gateway (ePDG) determined from the reachability list maintained in the cellular device prior to attaching to the target access network.

58. The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

59. At a minimum, Acer has known of the '453 patent at least as early as the filing date of the Complaint. In addition, Acer has known about the '453 patent at least as early as April 20, 2021, when it met with SPV to discuss the patents-in-suit. Further, Acer has known about the '453 patent since at least February 4, 2021, when Acer acknowledged access to a data room providing notice of its infringement.

60.     Prior to the filing of the Complaint, Acer knew or should have known of the '453 patent, and knew or should have known that they infringed the '453 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '453 patent and took deliberately wrongful steps to ignore their infringement of the '453 patent. Moreover, Acer has been on notice of the '453 patent as a result of previous lawsuits filed by the Plaintiff against competitors of Acer and other relevant market participants, such as LG and TCL.

61.     Upon information and belief, since at least the above-mentioned date when Acer was on notice of its infringement, Acer has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '453 patent to directly infringe one or more claims of the '453 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Acer does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '453 patent. Upon information and belief, Acer intends to cause, and have taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

62. Upon information and belief, despite having knowledge of the '453 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '453 patent, Acer has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Acer's infringing activities relative to the '453 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

63. SPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to SPV in an amount that adequately compensates SPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III
### (INFRINGEMENT OF U.S. PATENT NO. 7,158,148)

64. Plaintiff incorporates paragraphs 1 through 63 herein by reference.

65. SPV is the assignee of the '148 patent, entitled "Display equipment, display method, and recording medium for recording display control program," with ownership of all substantial rights in the '148 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

66. The '148 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '148 patent issued from U.S. Patent Application No. 10/202,392.

67. Acer has and continues to directly infringe one or more claims of the '148 patent in this judicial district and elsewhere in Texas and the United States.

68. On information and belief, Acer designs, develops, manufactures, assembles and markets display devices, including but not limited to computers, that support Microsoft ClearType. For example, the Aspire 7 runs the Windows 10 operating system, which supports Microsoft ClearType. *See* https://store.acer.com/en-us/aspire-7-laptop-a715-73g-75bw.

69. Acer directly infringes the '148 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '148 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Acer sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '148 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Acer directly infringes the '148 patent through its direct involvement in the activities of its subsidiaries, including Acer America Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '148 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Acer offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Acer is vicariously liable for this infringing

conduct of its U.S.-based sales subsidiaries, e.g., Acer America Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Acer and Acer America Corporation are essentially the same company, and Acer has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries.

70. For example, Acer infringes claim 4 of the '148 patent via the Accused Products. The Accused Products comprise the "display equipment" of claim 4. For example, the Aspire 7 includes a 15.6" Full HD (1920 x 1080) display. *See* https://store.acer.com/en-us/aspire-7-laptop-a715-73g-75bw.

71. The Accused Products comprise "a display device," "including three light-emitting elements aligned with each other in certain sequence to form a pixel, the three light-emitting elements illuminating three primary colors RGB." For example, the Aspire 7 includes a 15.6" Full HD (1920 x 1080) display. *See* https://store.acer.com/en-us/aspire-7-laptop-a715-73g-75bw. The display device in the Aspire 7 is an LCD including RGB pixels. Accordingly, the display device in the Aspire 7 includes three including three light-emitting elements aligned with each other in certain sequence to form a pixel. *See* https://store.acer.com/en-us/aspire-7-laptop-a715-73g-75bw.

72. The Accused Products comprise "a plurality of the pixels aligned with each other in a first direction to form a line" and "a plurality of the lines aligned with each other in a second direction perpendicular to the first direction, thereby forming a display screen on the display device." For example, the Aspire 7 includes an LCD with RGB pixels arranged in an orthogonal array to form a display screen on the display device.

73. The Accused Products comprise "a pattern-determining unit operable to determine a three-times magnified pattern of a target pixel by magnifying the target pixel three times in the

first direction in accordance with a raster image to be displayed." For example, the Aspire 7 supports DirectWrite, which is a text layout rendering API that utilizes ClearType to render text by using sub-pixel positioning. The ClearType sub-pixel font rendering magnifies the target pixel by three times in the first (horizontal) direction to increase the horizontal resolution by 300%, creating a three-times magnified pattern.

74.     The Accused Products are configured such that "the pattern-determining unit being further operable to determine, in accordance with the raster image to be displayed, a 'x' (x is an integral number) number of sub-pixel patterns positioned next to the target pixel on one side of the target pixel and a 'y' (y is a natural number) number of sub-pixel patterns positioned next to the target pixel on the other side of the target pixel." For example, ClearType utilizes sub-pixel rendering, which allows for the borrowing of pixels from adjacent whole pixels. ClearType can determine sub-pixel patterns for x number of sub-pixels on one side of a target pixel, and y number of sub-pixels on the opposite side of said target pixel.

75.     The Accused Products comprise "a display control unit operable to allocate the three-times magnified pattern, the x-number of sub-pixel patterns, and the y-number of sub-pixel patterns to the light-emitting elements of the display device, thereby displaying an image on the display device." The Accused Products include a GPU that is installed in the display equipment and allocates the target pixel three-times magnified pattern, the x-number of sub-pixel patterns, and the y-number of sub-pixel patterns to display an image on the display device via the light-emitting elements of the display device. *See* https://www.emdgroup.com/en/expertise/displays/solutions/liquid-crystals/lcd-technologies/ips.html . For example, the Aspire 7 includes an AMD Radeon RX Vega M GL GPU. *See* https://store.acer.com/en-us/aspire-7-laptop-a715-73g-75bw.

76.     The Accused Products are configured such that "wherein the pattern-determining unit determines the three-times magnified pattern, the x-number of sub-pixel patterns and the y-number of sub-pixel patterns only when the target pixel has a predetermined pixel value." The Accused Products, such as the Aspire 7, use a raster to set a bitmap incorporating render targets, which, when undergoing the ClearType rasterization process, is filtered for alpha values. The render targets include alpha modes with alpha values. The alpha modes determine how the alpha value is applied to the pixels in the bitmap. If the alpha mode is set to "ignore," then the ClearType raster is utilized, and the sub-pixel rendering method is performed that borrows x-number of sub-pixels from a first laterally adjacent pixel and y-number of sub-pixels from the laterally adjacent pixel which is opposite the first laterally adjacent sub-pixel is performed. On information and belief, in order for ClearType to perform sub-pixel rendering, the sub-pixel rendering operates upon a target pixel with a predetermined pixel value. ClearType uses DIGX to format pixels using DXGI_FORMAT enumeration; these enumerations define (in part) the bits allocated (e.g. 16 bits, 32 bits) to a pixel's color channel(s) and alpha value (each, and collectively, a "predetermined pixel value"). For example, ClearType will default to pixel values associated with the DXGI_FORMAT_B8G8R8A8 enumeration when a render target's pixel format and alpha mode is unknown. DXGI_FORMAT_B8G8R8A8_UNORM is described as a four-component, 32-bit unsigned-normalized integer pixel format that supports 8 bits for each pixel color channel and 8-bit pixel alpha. This means that the target pixel (as enumerated by DXGI_FORMAT_B8G8R8A8_UNORM) of the sub-pixel rendering process (carried out by ClearType) has a predetermined pixel value defined by e.g. the four separate values for each of the Blue, Green, Red pixel color channels, and the pixel's Alpha value.

77.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

78.     At a minimum, Acer has known of the '148 patent at least as early as the filing date of the Complaint. In addition, Acer has known about the '148 patent at least as early as April 20, 2021, when it met with SPV to discuss the patents-in-suit. Further, Acer has known about the '148 patent since at least February 4, 2021, when Acer acknowledged access to a data room providing notice of its infringement.

79.     Prior to the filing of the Complaint, Acer knew or should have known of the '148 patent, and knew or should have known that they infringed the '148 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '148 patent and took deliberately wrongful steps to ignore their infringement of the '148 patent.

80.     SPV has been damaged as a result of Acer's infringing conduct described in this Count. Acer is, thus, liable to SPV in an amount that adequately compensates SPV for Acer's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

81.     Plaintiff SPV is entitled to recover from Acer the damages sustained by Plaintiff as a result of Acer's wrongful acts, and willful infringement (including its willful blindness of infringement), in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

82.     Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case

within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

83.  Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

84.  Plaintiff respectfully requests that the Court find in its favor and against Acer, and that the Court grant Plaintiff the following relief:

1. A judgment that Acer has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2. A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Acer;

3. A judgment and order requiring Acer to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4. A judgment and order requiring Acer to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5. A judgment and order finding this to be an exceptional case and requiring Acer to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6. Such other and further relief as the Court deems just and equitable.

Dated: December 29, 2021

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Justin Kimble
Texas Bar No. 24036909
T. William Kennedy Jr.
Texas Bar No. 24055771
Jon Rastegar
Texas Bar No. 24064043
Ryan Griffin
Texas Bar No. 24053687
**Nelson Bumgardner Conroy PC**
2727 North Harwood Street
Suite 250
Dallas, TX 75201
Tel: (214) 446-4954
pat@nelbum.com
justin@nelbum.com
bill@nelbum.com
jon@nelbum.com
ryan@nelbum.com

**Attorneys for Plaintiff**
**Sovereign Peak Ventures, LLC**